Dow Complaint 1

RECEIVED

OCT 1 4 2020

RICHARD W. NAGEL, CLERK OF COURT
COLUMBUS, OHIO

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

LESLIE DOW                           :
P.O. Box 3082
Columbus, OH 43210                           Case No.
                                     :
                                        2 2 0 C V 5 3 8 2
          Plaintiff,                      Judge Morrison
vs.

                                     :
CHARLES HILLMAN as President and
CEO of Columbus Metropolitan
Housing Authority,                   :     CIVIL COMPLAINT
880 E 11th Ave
Columbus, OH 43211
                                     :

          and

COLUMBUS METROPOLITAN               :
HOUSING AUTHORITY,
880 E 11th Ave
Columbus, OH 43211                   :

          Defendants.

                                     :


          Plaintiff Leslie Dow enters this Civil Complaint under 42 U.S.C. § 1983 to request

that the court reverse the termination of Plaintiff's housing choice voucher, which was

terminated by the Defendant Columbus Metropolitan Housing Authority (CMHA)

without legal cause and without the proper due process guaranteed to the Plaintiff

under the Fourteenth Amendment to the United States Constitution.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES……..……………………………………………….………….….3

PRELIMINARY STATEMENT……………………………..………………………………...……4

JURISDICTION……………………………………………………………………………………4

VENUE……………………………………………………………………………………………..4

PARTIES…………………………………………………………..……………………………..……5

STATUTORY AND REGULATORY FRAMEWORK…………………………………..…5, 6

FACTS…………………………………………………………………………………………..7-11

FIRST CLAIM………..……………………………………………………………………………11

SECOND CLAIM……………………………………………………………………………11, 12

RELIEF REQUEST………………………………………………………………………………..12

Dow Complaint 3

## TABLE OF AUTHORITIES

| **Federal Regulations** | **Page** |
|---|---|
| 24 C.F.R § 982.551…..……………………………………………………………6, 12 | |
| 24 C.F.R § 982.551(b)…………………………………………………………….6, 12 | |
| 24 C.F.R § 982.552(c)(1)…………………………………………………………….6 | |
| 24 C.F.R § 982.555(a)………………………………………………………….6, 11 | |
| 24 C.F.R § 982.555(c)(2)…………..………………………………………………6, 11 | |

**United States Codes**

28 U.S.C. § 1331………………………………………………………………….4

28 U.S.C. § 1343………………………………………………………………….4

28 U.S.C. § 1391………………………………………………………………….4

42 U.S.C. § 1437………………………………………………………………….5

42 U.S.C. § 1437f………………………………………………………………….4

42 U.S.C. § 1437d(k)………………………………………………………………6, 11

42 U.S.C. § 1983…………………………………………………………………..1, 4, 12

**Constitutional Amendments**

Fourteenth Amendment to the United States Constitution……………………………..1, 4, 11

Dow Complaint 4

## COMPLAINT

## PRELIMINARY STATEMENT

1. Plaintiff Leslie Dow was a participant in the Section 8 Housing Assistance Voucher Program (hereinafter the Section 8 program). Plaintiff (hereinafter also referred to as Participant, Tenant, and/or Family) received housing assistance payments pursuant to the United States Housing and Community Development Act of 1972, 42 U.S.C. § 1437f.

2. Defendant, Columbus Metropolitan Housing Authority (hereinafter CMHA), terminated Plaintiff from the Section 8 program without legal cause and without proper due process. Plaintiff seeks relief that would require Defendant to reinstate Plaintiff to the Section 8 program retroactive to her date of termination.

## JURISDICTION

3. This action arises under 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

## VENUE

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) because the property involved and all the events and omissions giving rise to Plaintiff's claims occurred in Franklin County, Ohio.

## PARTIES

5.        Plaintiff Leslie Dow is a citizen of the United States. She resides at 81 East

9th Avenue, Apt 406, Columbus, Ohio 43201.

6.        Defendant CMHA is a corporation, created and existing under the laws of

the State of Ohio, Ohio Revised Code §3735.27 *et seq.* Defendant CMHA is within

the territorial jurisdiction of this Court, and is a Public Housing Authority

(hereinafter PHA) within the meaning of 42 U.S.C. § 1437.

## STATUTORY AND REGULATORY FRAMEWORK

7.        The Section 8 Program was established by Congress in 1974 through Title

II, Section 8 of the Housing and Community Development Act of 1974, 42 U.S.C.

§ 1437f.

8.        The Department of Housing and Urban Development (hereinafter HUD),

through an Annual Contributions Contract, provides funds to a government

entity or public body to act as a Public Housing Authority (hereinafter PHA),

which operates housing programs for low-income families.  The PHA, the

Defendant in this case, determines the eligibility of low-income participant

families.

9.        The eligible family locates a rental unit and executes a lease with the

owner.  The owner and PHA then execute a Housing Assistance Payment

Contract (the HAP Contract).  If the family is employed then the family pays a

percentage of the rent, which amounts to thirty percent of the family's income, and the PHA pays the remainder of the rent. If the family is not employed, then the PHA pays the entire balance of the rent.

10.     In order to remain in the Section 8 Program, the participating family must comply with the regulations codified at 24 C.F.R § 982.551. Participants are obligated to supply the information requested by the PHA or HUD as stipulated by 24 C.F.R § 982.551 (b).

11.     If the PHA believes the participating family has violated the regulations, it may propose to terminate the family from the Section 8 program and must provide a written notice to that affect. 24 C.F.R § 982.552(c)(1) and 24 C.F.R § 982.555(c)(2).

12.     The PHA must also give the participant an opportunity for an informal hearing regarding the termination decision. 42 U.S.C. § 1437d(k) and 24 C.F.R § 982.555(a).

13.     The Public Housing Authority (PHA) must notify the family that the family may request an informal hearing on the decision to terminate assistance. The notice must (i) Contain a brief statement of reasons for the decision, (ii) State that if the family does not agree with the decision, the family may request an informal hearing on the decision, and (iii) State the deadline for the family to request an informal hearing. 24 C.F.R § 982.555(c)(2).

Dow Complaint 7

## FACTS

14.         Beginning December 1, 2016, Plaintiff Leslie Dow was a participant in the

Section 8 Program.  Through the program, CMHA paid a rental subsidy to Ms.

Dow's landlord, Community Housing Network (CHN) for the apartment Ms.

Dow rented at 81 East 9th Avenue, Apt 406, Columbus, Ohio 43201.  When Ms.

Dow was employed she paid a portion of the rent, which amounted to 30 percent

of Ms. Dow's income. When Ms. Dow was unemployed, CMHA paid the entire

balance of the rent.

15.         Ms. Dow completed a recertification in 2017.  In May of 2018 Ms. Dow

wanted to move out of the building that she lived in to move to another

apartment. Ms. Dow completed the application to obtain a voucher for a different

apartment.  Ms. Dow could not find an apartment to rent with her voucher and

had to complete the voucher certification paperwork for her same apartment.

16.         The new voucher began on October 1, 2018. A CMHA staff person told Ms.

Dow that the voucher was for one year (October 1, 2018 - September 30, 2019)

and that Ms. Dow would have to complete recertification next year.  Ms. Dow

expected that a year meant that recertification would have to be done before the

voucher expired, for example about a few weeks before October 1, 2019.

17.         On August 25, 2019 the Plaintiff received a letter from CMHA on her

apartment door (Exhibit 1). This letter was emailed to Ms. Dow's landlord /

property manager and then the property manager or staff put the letter on Ms. Dow's apartment door. The letter, dated August 21, 2019, stated that Ms. Dow was terminated from the "Housing Choice Voucher Program" for the following reason (s): Tenant failed to complete annual recert [sic]. Tenant did not request informal hearing." The termination letter was from Yvette Littlejohn, CMHA Housing Advisor Supervisor. Ms. Dow had not received any correspondence about recertification from the Defendant prior to that termination letter.

18.      On August 28, 2019, at about 10:28a.m. Plaintiff went to the CMHA office, completed an Inquiry / Concern form (Exhibit 2), and explained that Plaintiff had not received any correspondence from CMHA prior to the termination letter. A staff person told Ms. Dow that the recertification packets are sent out around the end of June, to be completed by participants and returned by a July deadline. Plaintiff explained that she never received any packet in the mail and that the only correspondence from CMHA she received was the termination letter, which had been sent to her landlord.

19.      Ms. Dow then asked if it were possible to speak to a housing advisor before the end of the week regarding the termination letter Ms. Dow received. Ms. Dow offered to come back the next day if that were more convenient. The CMHA staff person informed the Plaintiff that someone would be out to speak to Plaintiff and that Plaintiff could have a seat in the waiting area.

20.  On August 28, 2019, at about 11:00a.m. Ciara Walker, a housing advisor for the Defendant, came out and called Ms. Dow into the conference room. Ms. Walker informed Ms. Dow that Ms. Dow and Ms. Walker would complete the recertification paperwork (Exhibit 3) right there in the conference room. Ms. Dow signed all of the required papers and Ms. Walker said that the only remaining documents that CMHA needed were a copy of Ms. Dow's ID (Exhibit 4) and a copy of Ms. Dow's bank statements (Exhibits 5 and 6).

21.  Ms. Dow agreed to turn in the supporting documents the same day and then to confirm, Ms. Dow asked Ms. Walker if there was anything else that Ms. Dow needed to do (aside from the ID copy and bank statements). Ms. Walker said there was nothing else that Plaintiff had to do and then Ms. Walker confirmed to Plaintiff that rent payments from CMHA to Plaintiff's landlord would continue as usual in October 2019 because Plaintiff had just completed the recertification paperwork.  Because Ms. Dow was unemployed the HAP contract determined that CMHA's rent subsidy would be for the entire rent amount for Ms. Dow's apartment.

22.  Ms. Dow asked Ms. Walker what could be done the next year if Ms. Dow did not receive a recertification packet in the mail, and if there were a specific time frame that Ms. Dow could come into the office to obtain and complete the paperwork.  Ms. Walker told Ms. Dow that if Ms. Dow did not receive any

correspondence by the end of June next year (2020), that Ms. Dow could come
into the CMHA office to obtain and complete the recertification paperwork.

23.     Before leaving the CMHA office on August 28, 2019 at about 11:26am
(after signing the recertification paperwork with Ms. Walker), Plaintiff asked a
staff person to copy her ID (Exhibit 4) to give to Ms. Walker. Plaintiff returned to
the CMHA office the same day at about 1:21pm and turned in the copies of her
bank statements to a front desk staff person (Exhibits 5 and 6).

24.     Plaintiff did not receive any correspondence from CMHA after that date
and because Plaintiff completed the recertification paperwork in person with Ms.
Walker, Plaintiff had no reason to believe that CMHA rent payments to Plaintiff's
landlord would not continue.

25.     Plaintiff at that time did not know what CMHA considered to be an
informal hearing, and because Ms. Walker said that rent payments would
continue as usual in October 2019, Plaintiff believed that the recertification
meeting with Ms. Walker either satisfied or obviated the informal hearing
requirement. Not until 2020 did Ms. Dow discover that Ms. Walker's statement
was not true and that CMHA was not making payments to her landlord.

26.     On May 27, 2020 Plaintiff received a letter (Exhibit 7) from her landlord,
signed by CHN property manager Cynthia Becton, stating that CMHA had not
been paying rent since October 2019 because Plaintiff had been terminated from

the housing voucher program. The letter stated that there was an outstanding balance for rent due.

27.     When Plaintiff's landlord inquired about the termination of rental assistance, CMHA responded that nothing could be done without a court injunction.

## FIRST CLAIM

28.     Plaintiff incorporates paragraphs 1 through 29 of this complaint as if rewritten herein.

29.     In terminating Plaintiff from the Section 8 program and by not giving Plaintiff an opportunity for a hearing, Defendant failed to comply with the Due Process clause of the Fourteenth Amendment.

30.     Defendants' actions also violated the United States Housing Act of 1937, 42 U.S.C. § 1437d(k).

31.     Defendants actions also violated Federal Regulations 24 C.F.R § 982.555(a) and (c).

## SECOND CLAIM

32.     Plaintiff incorporates paragraphs 1 through 33 of this complaint as if rewritten herein.

33.   Plaintiff met her obligations for the Section 8 program as codified in 24 C.F.R § 982.551(b) when she met with Housing Advisor Ciara Walker and completed the recertification paperwork.

34.   Plaintiff is entitled to relief under 42 U.S.C. § 1983.

### RELIEF REQUEST

WHEREFORE, Plaintiff requests that this Court:

1.   Take jurisdiction of this matter;

2.   Declare that Defendant's conduct violates the rights of Plaintiff under the U.S Constitution;

3.   Order Defendant to reinstate Plaintiff to the Section 8 Housing Choice Voucher Program retroactive to the date of termination;

4.   Order Defendant to pay Plaintiff's landlord the outstanding rent balance due (see Exhibit 8) for all rent payments between October 2019 and the present, which would have been payable under the HAP contract.


Respectfully submitted,


LESLIE DOW
Plaintiff *Pro Se*
P.O. Box 3082
Columbus, OH 43210
614-489-8761

Exhibits in support of Plaintiff Leslie Dow's Civil Complaint

Case No.

Plaintiff's
Exhibit: 1

Columbus Metropolitan Housing Authority
Housing Choice Voucher Programs Department
880 East 11th Avenue
Columbus, OH 43211

Client:  292214
Vendor:  L169518
Unit:    422036

August 21, 2019

Leslie Dow
81 E 9th Ave Apt 406
Columbus, OH 43201-0000

Terrace Place LLC

c/o Community Housing Network
1680 Watermark Drive
Columbus, OH 43214

Subject:  TERMINATION OF HOUSING ASSISTANCE

Dear Leslie Dow:

This letter is to inform you that effective, 09/30/2019, you are terminated from
the Housing Choice Voucher Program for the following reason(s):

TENANT FAILED TO COMPLETE ANNUAL RECERT

TENANT DID NOT REQUEST INFORMAL HEARING

_____

If you have not moved from the above mentioned address, it will be your
responsibility to pay the full contract rent of $640 effective,10/01/2019.


A copy of this notice has been sent to your landlord in order to serve notice that
CMHA is terminating the Housing Assistance Payments Contract under the terms of
the Contract.


Sincerely,

Y. Littlejohn

Housing Choice Voucher Supervisor


cc:  Tenant File
     Landlord

2019 AUG 28 AM 10: 26

S8 FINAL

Plaintiff's
**Exhibit: 2**



# COLUMBUS METROPOLITAN HOUSING AUTHORITY
COMMUNITY. COMMITMENT. COLLABORATION.

## *INQUIRY/CONCERN FORM*



DATE STAMP

2019 AUG 28 AM 10: 28

Provide copy to Client/Landlord

Circle one: Tenant / Landlord

Name: LESLIE DOW                    SSN# ——

Address: 81 E 9TH AVE APT 406

Phone:

Reason for my visit:

IN JULY I RECEIVED A LETTER FROM THE PROPERTY MANAGER, CYNTHIA BECTON, STATING THAT I WOULD NEED TO MEET WITH CYNTHIA BECTON THREE WEEKS BEFORE MY ANNUAL CERTIFICATION DATE OF NOVEMBER 1, 2019. THIS WEEK I RECEIVED A LETTER FROM CMHA STATING THAT ~~THAT~~ I AM NO LONGER IN THE HOUSING PROGRAM BECAUSE I DID NOT COMPLETE MY ANNUAL CERTIFICATION. I HAVE ATTACHED BOTH LETTERS TO THIS INQUIRY.

**Please allow a 48-hour response time for each inquiry.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

For office use only

Action Taken / Plan of Action:

_____ Housing Advisor

_____ Supervisor



**COLUMBUS METROPOLITAN HOUSING AUTHORITY**
COMMUNITY. COMMITMENT. COLLABORATION.

Plaintiff's
**Exhibit: 3**

Page 001

## REQUEST FOR HARDSHIP EXEMPTION
## FROM THE PAYMENT OF MINIMUM RENT

I, **LESLIE DOW** as head of household state that my family is unable to pay the minimum rent required and request an exemption, i.e. that I not have to pay minimum rent due to the following hardships checked.

( )  Loss of eligibility or awaiting an eligibility determination for a Federal

State, or local assistance program.

( )  My family will be evicted because we have no ability to pay

the minimum rent.

(X)  My family income has decreased because of changed circumstances,

including loss of employment.

( )  The death of a member of my household has occurred resulting in our

inability to pay the minimum rent.

( )  Other circumstances (CMHA or HUD approved).

**Please check one of the following regarding your hardship indicated above:**

( )  My hardship is expected to be temporary (90 days or less).

(X)  My hardship is expected to be permanent (91 days or more).

Note: If CMHA determines that the hardship is expected to be temporary, the minimum rent will be imposed retroactively to the time of suspension and will result in a debt owed to CMHA. Under these circumstances CMHA will work out a payment arrangement for tenant.

## Please check this box if the above does not apply to you. ☐

Signature of HOH/Tenant: _____     Date: 8/28/19

Request For Hardship Exemption

*Ciara Walker*

Plaintiff's
Exhibit: 3

Page 002

This page purposely left blank,

please see next page



# COLUMBUS METROPOLITAN HOUSING AUTHORITY

COMMUNITY. COMMITMENT. COLLABORATION.

*(A separate form must be signed by each member of the household.)*

**Plaintiff's Exhibit: 3**

Page 003

### *Effective 11/16/2012* - REPORTING CHANGES IN INCOME AND FAMILY COMPOSITION BETWEEN ANNUAL REEXAMINATIONS FOR ALL HOUSING CHOICE VOUCHER AND SHELTER PLUS CARE TENANTS:

Except for limited circumstances, families are not required to report increases in income between Annual Reexaminations.  This temporary delay in rent increases serves as an incentive for families to improve and maintain their improved financial circumstances.

Families **MAY** report changes at any time regarding earned or unearned income, family composition, child care expenses,  medical costs or other circumstances that would result in a decrease  in the family's portion of rent.  **INCOME DECREASES MUST LAST FOR MORE THAN 30 DAYS TO QUALIFY FOR A NEW RENT DETERMINATION AND A POSSIBLE REDUCTION IN RENT.**

Decreases in income due to a family member's decision to voluntarily and deliberately end employment (as opposed to termination or layoff) and decreases in income for failure to comply with welfare and public assistance economic self-sufficiency requirements that result in sanctions usually ***are not*** considered to be a basis for a reduction in the family's rent payment and will be reviewed at their next scheduled annual reexamination.  Terminations and layoffs must be documented by the family and are subject to verification by CMHA.

The addition or removal of any family member and their income to the household, or a change in the Head of Household **MUST** be reported within 30 calendar days of the occurrence and must be approved by CMHA.  Failure to report these changes as indicated above is a violation of family obligations.

If you do not report the changes in a timely manner, you may still have to pay a higher rent or repay CMHA for overpaid funds to your landlord. See CMHA's Administrative Plan, Interim Reexamination of Income and Rent, 15-1, for more details.

This form must be either dropped off at the front desk in person at CMHA, where a date-stamped copy will be given to you for your records, or mailed back to CMHA.  **ALL CHANGES REQUIRE AN APPOINTMENT IN OUR OFFICE WITH YOUR ASSIGNED HOUSING ADVISOR IN ORDER TO BE CONSIDERED TIMELY.**  Do not attach documentation – bring to your appointment.   This form will record the exact date the information was first reported to CMHA and an appointment letter will be mailed to you within 3 days.  If you have not received an appointment letter within 10 days, please contact your housing advisor for additional assistance in this important matter.

*I have completely read, understand and have received a copy of the reporting requirements for all income changes as stated above and will contact CMHA for an appointment as required.*

| | |
|---|---|
| **Signature of Household Member** | **B 28 19** <br> *Date* |

**Signed in my presence:** _____*Ciara Walker*_____  _____
　　　　　　　　　　　　　　　**CMHA Representative**　　　　　　*Date*

*Revised 05/15/2013*

HCV-1034-Interim Change Reporting Form Acknowledgement (Carbon Copy White)

Plaintiff's
**Exhibit: 3**

Page 004

This page purposely left blank,

please see next page

# Columbus Metropolitan Housing Authority
## Housing Choice Voucher Program
### Requirements For Participants

**Plaintiff's
Exhibit: 3**

**Page 005**

**Obligations of the Family**

A.  When the family's unit is approved and the HAP contract executed, the family must follow the rules listed below in the order to continue participating in the HCV Program.

B.  **The Family Must:**
    1.  Supply any information that the HA or HUD determines to be necessary including evidence of citizenship or eligible immigration status, and information for the use in a regularly scheduled reexamination of family income and composition.
    2.  Disclose and verify social security numbers and sign and submit consent forms for obtaining information.
    3.  Supply any information requested by the HA to verify that the family is living in the unit or information related to the family absence from the unit.
    4.  Promptly notify the HA in writing when the family is away from the unit for an extended period of time in accordance with HA policies.
    5.  Allow the HA to inspect the unit at reasonable times and after reasonable notice.
    6.  Notify the HA and the owner in writing before moving out or terminating the lease.
    7.  Use the assisted unit for the residence by the family. The unit must be the family's only residence.
    8.  Promptly notify the HA in writing of the birth, adoption, or court-ordered custody of a child.
    9.  Request HA written approval to add any other family member as an occupant of the unit.
    10. Promptly notify the HA in writing if any family member no longer lives in the unit.
    11. Give the HA a copy of any owner eviction notice.
    12. Pay utility bills and provide and maintain any appliances that the owner is not required to provide under the lease.

C.  **Any information the family supplies must be true and complete.**

D.  **The Family (including each Family member) must not:**
    1.  Own or have any interest in the unit (other than in cooperative, or the owner of a manufactured home leasing a manufactured home space).
    2.  Commit any serious or repeated violation of the lease.
    3.  Commit fraud, bribery or any other corrupt or criminal act in connection with the program.
    4.  Participate in illegal drug or violent criminal activity.
    5.  Sublease or let the unit or assign the lease or transfer the unit.
    6.  Receive Section 8 tenant-based program housing assistance while receiving another housing subsidy, for the same unit or a different unit under any other Federal, State or local housing program.
    7.  Damage the unit or premises (other than damage from ordinary wear and tear) or permit any guest to damage the unit or premises.
    8.  Receive Section 8 tenant-based program housing assistance while residing in a unit owned by a parent, child, grandparent, grandchild, sister or brother of any member of the family, unless the HA has determined (and has notified the owner and the family of such determination) that approving rental of the unit, notwithstanding such relationship, would provide reasonable accommodation for a family member who is a person with disabilities.
    9.  Engage in illegal use of a controlled substance; or abuse of alcohol that threatens the health and safety or the right to peaceful enjoyment of the premises by other residents.

My/our signature below is an ACKNOWLEDGEMENT that these requirements have been reviewed with me/us and I/we have been supplied with a copy of this notice.

_____  8/28/19
Signature Head of Household/Date

_____
Signature of Spouse/Date

_____
Signature of Other Adult/Date

_____
Signature of Other Adult/Date

HCV-1000-Family Obligations

*Ciara Walker*

Plaintiff's
**Exhibit: 3**

Page 006

**This page purposely left blank,**

**please see next page**



# U.S. Department of Housing and Urban Development
## Office of Public and Indian Housing

# DEBTS OWED TO PUBLIC HOUSING AGENCIES AND TERMINATIONS

**Paperwork Reduction Notice:** Public reporting burden for this collection of information is estimated to average 7 minutes per response. This includes the time for respondents to read the document and certify, and any recordkeeping burden. This information will be used in the processing of a tenancy. Response to this request for information is required to receive benefits. The agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. The OMB Number is 2577-0266, and expires 10/31/2019.

**NOTICE TO APPLICANTS AND PARTICIPANTS OF THE FOLLOWING HUD RENTAL ASSISTANCE PROGRAMS:**
- Public Housing (24 CFR 960)
- Section 8 Housing Choice Voucher, including the Disaster Housing Assistance Program (24 CFR 982)
- Section 8 Moderate Rehabilitation (24 CFR 882)
- Project-Based Voucher (24 CFR 983)

The U.S. Department of Housing and Urban Development maintains a national repository of debts owed to Public Housing Agencies (PHAs) or Section 8 landlords and adverse information of former participants who have voluntarily or involuntarily terminated participation in one of the above-listed HUD rental assistance programs. This information is maintained within HUD's Enterprise Income Verification (EIV) system, which is used by Public Housing Agencies (PHAs) and their management agents to verify employment and income information of program participants, as well as, to reduce administrative and rental assistance payment errors. The EIV system is designed to assist PHAs and HUD in ensuring that families are eligible to participate in HUD rental assistance programs and determining the correct amount of rental assistance a family is eligible for. All PHAs are required to use this system in accordance with HUD regulations at 24 CFR 5.233.

HUD requires PHAs, which administers the above-listed rental housing programs, to report certain information at the conclusion of your participation in a HUD rental assistance program. This notice provides you with information on what information the PHA is required to provide HUD, who will have access to this information, how this information is used and your rights. PHAs are required to provide this notice to all applicants and program participants and you are required to acknowledge receipt of this notice by signing page 2. Each adult household member must sign this form.

**What information about you and your tenancy does HUD collect from the PHA?**
The following information is collected about each member of your household (family composition): full name, date of birth, and Social Security Number.

The following adverse information is collected once your participation in the housing program has ended, whether you voluntarily or involuntarily move out of an assisted unit:

1. Amount of any balance you owe the PHA or Section 8 landlord (up to $500,000) and explanation for balance owed (i.e. unpaid rent, retroactive rent (due to unreported income and/ or change in family composition) or other charges such as damages, utility charges, etc.); and
2. Whether or not you have entered into a repayment agreement for the amount that you owe the PHA; and
3. Whether or not you have defaulted on a repayment agreement; and
4. Whether or not the PHA has obtained a judgment against you; and
5. Whether or not you have filed for bankruptcy; and
6. The negative reason(s) for your end of participation or any negative status (i.e. abandoned unit, fraud, lease violations, criminal activity, etc.) as of the end of participation date.

**Plaintiff's Exhibit: 3**    Page 007

**Plaintiff's Exhibit: 3**  Page 008

**Who will have access to the information collected?**
This information will be available to HUD employees, PHA employees, and contractors of HUD and PHAs.

**How will this information be used?**
PHAs will have access to this information during the time of application for rental assistance and reexamination of family income and composition for existing participants. PHAs will be able to access this information to determine a family's suitability for initial or continued rental assistance, and avoid providing limited Federal housing assistance to families who have previously been unable to comply with HUD program requirements. If the reported information is accurate, a PHA may terminate your current rental assistance and deny your future request for HUD rental assistance, subject to PHA policy.

**How long is the debt owed and termination information maintained in EIV?**
Debt owed and termination information will be maintained in EIV for a period of up to ten (10) years from the end of participation date or such other period consistent with State Law.

**What are my rights?**
In accordance with the Federal Privacy Act of 1974, as amended (5 USC 552a) and HUD regulations pertaining to its implementation of the Federal Privacy Act of 1974 (24 CFR Part 16), you have the following rights:
1. To have access to your records maintained by HUD, subject to 24 CFR Part 16.
2. To have an administrative review of HUD's initial denial of your request to have access to your records maintained by HUD.
3. To have incorrect information in your record corrected upon written request.
4. To file an appeal request of an initial adverse determination on correction or amendment of record request within 30 calendar days after the issuance of the written denial.
5. To have your record disclosed to a third party upon receipt of your written and signed request.

**What do I do if I dispute the debt or termination information reported about me?**
If you disagree with the reported information, you should contact in writing the PHA who has reported this information about you. The PHA's name, address, and telephone numbers are listed on the Debts Owed and Termination Report. You have a right to request and obtain a copy of this report from the PHA. Inform the PHA why you dispute the information and provide any documentation that supports your dispute. HUD's record retention policies at 24 CFR Part 908 and 24 CFR Part 982 provide that the PHA may destroy your records three years from the date your participation in the program ends. To ensure the availability of your records, disputes of the original debt or termination information must be made within three years from the end of participation date; otherwise the debt and termination information will be presumed correct. Only the PHA who reported the adverse information about you can delete or correct your record.

Your filing of bankruptcy will not result in the removal of debt owed or termination information from HUD's EIV system. However, if you have included this debt in your bankruptcy filing and/or this debt has been discharged by the bankruptcy court, your record will be updated to include the bankruptcy indicator, when you provide the PHA with documentation of your bankruptcy status.

The PHA will notify you in writing of its action regarding your dispute within 30 days of receiving your written dispute. If the PHA determines that the disputed information is incorrect, the PHA will update or delete the record. If the PHA determines that the disputed information is correct, the PHA will provide an explanation as to why the information is correct.

| This Notice was provided by the below-listed PHA: | I hereby acknowledge that the PHA provided me with the *Debts Owed to PHAs & Termination Notice:* |
|---|---|
| Columbus Metropolitan Housing Authority<br>880 East 11th Avenue<br>Columbus, OH 43211-2771 | Signature _[signature]_  Date 8/28/19<br>Printed Name  LESLIE DOW |

Plaintiff's
**Exhibit: 3**

Page 009

This page purposely left blank,

please see next page

Plaintiff's
**Exhibit: 4**

C.M.

2019 AUG 28 AM 11:26

RECEIVED





# US bank.

P.O. Box 1800
Saint Paul, Minnesota  55101-0800

9376        TRN                    S              X        ST01

**Uni-Statement**

Account Number:
▬▬▬▬▬▬▬

Statement Period:
Jul 24, 2019
through
Aug 22, 2019

Page 1 of 1

Plaintiff's
Exhibit: 5



000029565 01 SP     000638180559537 E
LESLIE M DOW
PO BOX 3082
COLUMBUS OH  43210-0082

☎                                    *To Contact U.S. Bank*

**By Phone:**                        *1-800-US BANKS*
                                     *(1-800-872-2657)*

*Cincinnati*
**Metro Area:**                      *513-632-4141*

**U.S. Bank accepts Relay Calls**
*Internet:*                          *usbank.com*

---

## STUDENT CHECKING                                                          *Member FDIC*

U.S. Bank National Association                          **Account Number** ▬▬▬▬▬▬▬

**Account Summary**

| | | | | |
|---|---|---|---|---|
| Beginning Balance on Jul 24 | $ | 234.43 | Number of Days in Statement Period | 30 |
| **Ending Balance on Aug 22, 2019** | $ | **234.43** | | |

---

2019 AUG 28  PM 1:21
RECEIVED

**THE HUNTINGTON NATIONAL BANK**
PO BOX 1558 EA1W37
COLUMBUS OH 43216-1558



Plaintiff's
Exhibit: 6

Page 001



LESLIE M DOW
▓▓▓ E 9TH AVE APT 406
COLUMBUS OH 43201-2138

*Have a Question or Concern?*

Stop by your nearest  Customer
Huntington office or  Information
contact us at:  Privacy Notice

1-800-480-BANK (2265)

www.huntington.com

## Asterisk-Free Checking Account                      Account: ▓▓▓▓▓▓▓

Statement Activity From:
07/11/19 to 08/09/19

| | |
|---|---|
| **Beginning Balance** | **$27.99** |
| Credits (+) | 200.00 |
| Debits (-) | 153.32 |
| Total Fees (-) | 0.00 |
| | |
| **Ending Balance** | **$74.67** |
| | |
| Average Balance | 58.61 |
| Low Balance | 2.99 |

2019 AUG 28  PM 1:21
RECEIVED  CMHA

## Deposit / Credit Activity (+)                        Account: ▓▓▓▓▓▓▓

| Date | Description | Amount |
|------|-------------|-------:|
| 07/15 | ATM CASH DEPOSIT | 10.00 |
| 07/18 | ATM CASH DEPOSIT | 60.00 |
| 07/24 | ATM CASH DEPOSIT | 15.00 |
| 08/05 | ATM CASH DEPOSIT | 105.00 |
| 08/07 | ATM CASH DEPOSIT | 10.00 |

## Debit Card / POS Activity (-)                        Account: ▓▓▓▓▓▓▓

| Date | Description | Amount |
|------|-------------|-------:|
| 07/11 | PURCHASE ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | 25.00 |
| 07/22 | PURCHASE ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | 9.66 |
| 07/25 | PURCHASE ▓▓▓▓▓▓▓ | 5.17 |
| 08/01 | PURCHASE ▓▓▓▓▓▓▓▓▓▓▓▓ | 50.17 |
| 08/09 | PURCHASE ▓▓▓▓▓▓▓▓ | 3.92 |

Investments are offered through the Huntington Investment Company, Registered Investment Advisor, member FINRA/SIPC, a wholly-owned subsidiary of Huntington Bancshares Inc.

The Huntington National Bank is Member FDIC. ▓ ® and Huntington ® are federally registered service marks of Huntington Bancshares Incorporated. Patent pending for the 24-Hour Grace™ system and method.  ©2019 Huntington Bancshares Incorporated.

**Plaintiff's Exhibit: 6**

Page 002

 **Huntington**

## *Debit Card / POS Activity (-)*

Account: ▅▅▅▅▅▅

| Date | Description | Amount |
|------|-------------|--------|
| 08/09 | PURCHASE ▅▅▅▅▅▅▅▅▅ | 59.40 |

## *Asterisk-Free Checking Balance Activity*

Account: ▅▅▅▅▅▅

| Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|
| 07/10 | 27.99 | 07/22 | 63.33 | 08/05 | 127.99 |
| 07/11 | 2.99 | 07/24 | 78.33 | 08/07 | 137.99 |
| 07/15 | 12.99 | 07/25 | 73.16 | 08/09 | 74.67 |
| 07/18 | 72.99 | 08/01 | 22.99 | | |

---

**In the Event of Errors or Questions Concerning Electronic Fund Transfers**

Contacting Us About Errors and Questions

Reporting: How, When, Where and What:

- Call us or write to us as soon as you can if you think your statement or receipt is wrong or if you need more information about a transaction. You may call our toll-free number, 1-800-480-BANK (2265), or write to The Huntington National Bank, EA4W61 P.O. Box 1558, Columbus, Ohio 43216.
- We must hear from you no later than 60 days after we sent (or made available) the FIRST statement on which the problem or error appeared. Please provide the following information:
  - Your name and account number (if any).
  - A description of the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
  - The dollar amount of the suspected error.

Our Investigation:

- **Timing:** We will determine whether an error occurred within ten (10) business days after we hear from you and will correct any ▅▅▅▅▅ romptly.
- **Provisional (i.e.Temporary) Credits:** If we need more time, however, we may take up to 45 days to investigate your complaint or question. If we decide to do this, we will provisionally credit your Account within ten (10) business days for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within ten (10) business days; we are not required to provisionally credit your Account.

**Verification of Electronic Deposits** If you have authorized someone to make regular electronic fund transfers of money to your account at least once every sixty days, you can call to find out whether or not the deposit has been received by us, call either 1-614-480-BANK or call toll free 1-800-480-BANK.

---

▅▅▅▅▅▅ **ur Statement** - For your convenience, a balancing worksheet is available on our web site www.huntington.com under the Planning & Tools section, or at your local branch.





Plaintiff's
Exhibit: 7

May 27, 2020


Leslie Dow
81 E. 9th Ave. Apt. 406
Columbus, OH 43201


RE: CMHA voucher


Dear Leslie:


We are reaching out to you to assist with finding resources to help pay your past due rent.

You received a letter from CMHA, that you did not recertify timely and your voucher program ended on 9/30/2019.

Currently, you are on full market contract rent of $756.00 per month.


We value you as a resident and look forward to helping you resolve this issue.

Please contact me at (614) 487-6780 or (614)-270-8157 to schedule a meeting.



Sincerely,

Cynthia Becton, Property Manger
Community Housing Network

Cc: Tenant file

**Plaintiff's Exhibit: 8**

## Outstanding Rent Balance

Page 001

Amount of rent per month and the total outstanding rent balance due for Leslie Dow's apartment:

CMHA approved a rent increase to $756.00 for the apartment that began in July of 2020.

*CHN requested another rent increase for the apartment. If CMHA approves this increase, rent will be $794 beginning in October 2020.

Outstanding Rent

| Month and Year | Rent Amount |
|---|---|
| October 2019 | $640.00 |
| November 2019 | $640.00 |
| December 2019 | $640.00 |
| January 2020 | $640.00 |
| February 2020 | $640.00 |
| March 2020 | $640.00 |
| April 2020 | $640.00 |
| May 2020 | $640.00 |
| June 2020 | $640.00 |
| July 2020 | $756.00 |
| August 2020 | $756.00 |
| September 2020 | $756.00 |
| *October 2020 | $794.00 |
| *Total Outstanding Rent Balance: | $8822.00 |

*Potential Upcoming Rent

| Month and Year | Rent Amount |
|---|---|
| *November 2020 | $794.00 |
| *December 2020 | $794.00 |
| *January 2021 | $794.00 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

Outstanding Rent Balance

**Plaintiff's Exhibit: 8**

**This is the total outstanding rent balance if CMHA does not approve the October 2020 rent increase that CHN requested.

Page 002

Outstanding Rent

| Month and Year | Rent Amount |
|---|---|
| October 2019 | $640.00 |
| November 2019 | $640.00 |
| December 2019 | $640.00 |
| January 2020 | $640.00 |
| February 2020 | $640.00 |
| March 2020 | $640.00 |
| April 2020 | $640.00 |
| May 2020 | $640.00 |
| June 2020 | $640.00 |
| July 2020 | $756.00 |
| August 2020 | $756.00 |
| September 2020 | $756.00 |
| **October 2020 | $756.00 |
| **Total Outstanding Rent Balance: | **$8784.00** |

*Potential Upcoming Rent

| Month and Year | Rent Amount |
|---|---|
| **November 2020 | $756.00 |
| **December 2020 | $756.00 |
| **January 2021 | $756.00 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |